Leslie HAUK, Appellant
(Defendant below)

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 49S00–9805–CR–262.

Supreme Court of Indiana.

June 8, 2000.

Katherine A. Cornelius, Marion County Public Defenders Office, Indianapolis, Indiana, Attorney for Appellant.

Jeffery A. Modisett, Attorney General of Indiana, Janet Brown Mallett, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

SULLIVAN, Justice.

Defendant Leslie Hauk was convicted of and sentenced for Murder and Robbery. She appeals, arguing that (1) the trial court improperly refused her requests to instruct the jury on the crimes of Theft and Assisting a Criminal, and (2) the trial court improperly excluded evidence of a co-defendant's bad character. Finding the trial court's actions proper, we affirm the trial court's judgments.

We have jurisdiction over this direct appeal because the longest single sentence exceeds 50 years. Ind. Const. art. VII, § 4; Ind. Appellate Rule 4(A)(7).

## Background

The facts most favorable to the verdict indicate that on March 5, 1995, Defendant Leslie Hauk and her live-in companion, Daniel Sturgeon, brutally beat James Coffman with a crow bar and stabbed him numerous times with a kitchen knife. Defendant and Sturgeon stole as much as $1,500 from Coffman both after he died and during the course of time they spent drinking with and beating Coffman prior to killing him. After Coffman was dead, Sturgeon gave Defendant $389 and told her to get rid of the knife. Defendant left the crime scene, crashed her car soon thereafter, and was arrested for driving while intoxicated. Prior to suspecting her connection to Coffman's murder, the police found the kitchen knife in Defendant's car and credited her commissary account with the $389.

Gregory Anderson, a friend of Sturgeon's, testified that on March 6, 1995, he helped Sturgeon carry Coffman's body out of the house and they placed it in the trunk of Coffman's car. Two days later, Coffman's son located Coffman's car and called for a police officer; the two of them opened the trunk and discovered Coffman's body.

On March 13, 1995, the State charged Defendant with Murder,[1] Felony Murder,[2] and Robbery,[3] a class B felony. A jury found Defendant guilty of all three charges, but the trial court merged the Murder and Felony Murder convictions, sentencing Defendant to 55 years for Murder and 20 years for Robbery, the sentences to be served concurrently. Sturgeon was also tried, convicted, and sentenced for his part in this matter. *See Sturgeon v. State,* 719 N.E.2d 1173 (Ind. 1999).

Additional facts will be provided as necessary.

## Discussion

### I

Defendant's principal claim, as best we understand it, is that because of a series of rulings by the trial court rejecting her requests for certain jury instructions, she was denied the opportunity to be convicted of crimes she acknowledged she committed and was convicted of crimes she did not commit. It was her defense that she bore no culpability for either the murder or robbery of Coffman — that Sturgeon was solely responsible for those crimes. But she admits that after Sturgeon had completed the commission of those crimes, she accepted the $389 and attempted to hide the knife. As such, she contends that she should have been convicted of Theft[4] and of Assisting a Criminal,[5] but not of Murder and Robbery.

In furtherance of this defense, Defendant asked the trial court to instruct the jury on Theft and Assisting a Criminal as lesser-included offenses of Robbery and Murder, respectively. The trial court denied the request. Defendant contends in this appeal that the trial court's denial constituted reversible error in that she was entitled to the instructions as a matter of substantive law and, more broadly, the refusal to give the instructions effectively denied her a fair trial and the opportunity to present her defense.

Before proceeding to the merits of these claims, we note that Sturgeon made essentially the same argument in his appeal from his convictions for the same offenses. That is, he claimed that he bore no culpability for either the murder or robbery of Coffman — that Defendant was solely responsible for those crimes and that he was only guilty of assisting her after the crimes had been completed. *See Sturgeon,* 719 N.E.2d at 1182–84.

---

1. Ind.Code § 35–42–1–1 (1993).

2. *Id.*

3. *Id.* § 35–42–5–1.

4. *Id.* § 35–43–4–2.

5. *Id.* § 35–44–3–2.

### A

Defendant's argument suggests that she believes there was insufficient evidence to support a conclusion that she was guilty of Murder and Robbery. Given the structure of her argument, it is helpful to address that question first.

Defendant was convicted of Murder and Robbery under an accomplice liability theory. At a minimum, as evidenced by Defendant's own admissions and testimony, Defendant stole money from Coffman, observed his brutal murder, and fled the crime scene to dispose of one of the murder weapons. Indiana Code § 35–41–2–4 (1993) allows a defendant to be convicted of a crime based on accomplice liability, providing that one "who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense." Also, "[a]n accomplice can be held criminally liable for 'everything done by his confederates which was a probable and natural consequence of their common plan.'" *Shane v. State*, 716 N.E.2d 391, 396 (Ind.1999) (quoting *Harris v. State*, 425 N.E.2d 154, 156 (Ind.1981)). A jury may infer complicity and participation in a crime "'from defendant's failure to oppose the crime, companionship with the one engaged therein, and a course of conduct before, during, and after the offense which tends to show complicity.'" *Id.* "An accomplice is equally as culpable as the one who commits the actual crime." *Id.* (citing *Johnson v. State*, 687 N.E.2d 345, 349 (Ind.1997)). If the jury believed nothing but Defendant's own testimony, the evidence was sufficient to support her convictions.

### B

As to Defendant's claim that the trial court should have instructed the jury on Theft as a lesser-included offense of Robbery, we agree with the trial court.

When a defendant requests a lesser-included offense instruction, the trial court must apply a three-part analysis: (1) determine whether the lesser-included offense is inherently included in the crime charged; if not, (2) determine whether the lesser-included offense is factually included in the crime charged; and, if either, (3) determine whether a serious evidentiary dispute exists whereby the jury could conclude that the lesser offense was committed but not the greater. *See Wright v. State*, 658 N.E.2d 563, 566–67 (Ind.1995). The trial court should grant the defendant's request for a lesser-included offense instruction if it answers the third inquiry affirmatively. *See id.* at 567.

To determine whether a lesser-included offense is inherently included in a charged crime, the trial court compares the relevant statutes. *See id.* at 566. The requested lesser-included offense is inherently included in the charged crime if (a) the parties could establish commission of the claimed lesser-included offense by proof of the same material elements or less than all of the material elements of the charged crime, or (b) the only feature distinguishing the claimed lesser-included offense from the charged crime is that a lesser culpability is required to establish commission of the lesser-included offense. *Id.* at 566–67 (citations omitted).

The State agrees that theft is a lesser-included offense of robbery. Appellee's Br. at 3; *see also Allen v. State*, 686 N.E.2d 760, 777 (Ind.1997) (citing *Landers v. State*, 464 N.E.2d 912 (Ind.1984)), *cert. denied*, 525 U.S. 1073, 119 S.Ct. 807, 142 L.Ed.2d 667 (1999). Theft requires the knowing or intentional exertion of unauthorized control over the property of another person with the intent to deprive the other person of any part of the property's value or use. Ind.Code § 35–43–4–2. Robbery requires the same elements, as well as the use of threat or force. *Id.* § 35–42–5–1. The State charged Defendant with robbery, but could have established that Defendant committed theft by proving the elements of robbery, less the use of force. Therefore, theft is inherently included in a robbery charge.

Because theft is inherently included in a robbery charge, we must determine whether a serious evidentiary dispute existed concerning the element distinguishing the two crimes — use of force — whereby the jury could have concluded that Defendant committed theft but not robbery. *See Wright*, 658 N.E.2d at 567. Defendant asserts that evidence was in dispute regarding whether she facilitated Sturgeon's robbery of Coffman or whether she merely accepted money that Sturgeon stole from Coffman.

Despite Defendant's claim, there was no dispute but that Coffman was the victim of force, in the form of a brutal and bloody attack, used to procure his money. Defendant admittedly witnessed Sturgeon bludgeoning and stabbing Coffman before taking his money. Whether Defendant facilitated or participated in the attack goes to the question of whether she is guilty as an accessory to the crime charged. *See Simpson v. State*, 628 N.E.2d 1215, 1221 (Ind.Ct.App.1994) (holding that a defendant is not entitled to an instruction on theft as a lesser-included offense to robbery where the defense challenged the State's allegations that the defendant participated in the robbery, the only question before the jury was the defendant's participation in the crime, and there was no question that all of the elements of robbery were present), *transfer denied*. Defendant's defense that she personally did not engage in the use of force to take money off of Coffman's person does not create an evidentiary dispute regarding whether force was used in the commission of this crime, and so does not entitle Defendant to an instruction on theft as a lesser-included offense to her robbery charge. *See Allen*, 686 N.E.2d at 777 (holding that a defendant is not entitled to a theft instruction as a lesser-included offense of a robbery charge where there is no evidence of simple theft and the victim was clearly relieved of his or her money in a violent manner).

## C

We also agree with the trial court's decision to reject Defendant's request to have the jury instructed on Assisting a Criminal as a lesser-included offense of Murder. Indiana Code § 35–44–3–2 (1993) defines the crime of assisting a criminal as follows:

A person not standing in the relation of parent, child, or spouse to another person who has committed a crime or is a fugitive from justice who, with intent to hinder the apprehension or punishment of the other person, harbors, conceals, or otherwise assists the person commits assisting a criminal....

▮▮▮ Assisting a criminal is not an inherently lesser-included offense of murder or robbery because a comparison of the statutory elements reveals several differences between the elements in each of the charged crimes and those of assisting a criminal. *See also Wright v. State*, 690 N.E.2d 1098, 1108 (Ind.1997) (holding that assisting a criminal is not an inherently included lesser offense of murder or felony murder), *reh'g denied*. Also, the assisting a criminal statute was intended to apply to people who did not actively participate in the crime itself, but who did assist a criminal after he or she committed a crime. *See id.* (citing *Smith v. State*, 429 N.E.2d 956, 959 (Ind.1982); 1 Charles E. Torcia, *Wharton's Criminal Law* § 33, at 198 and § 35, at 210 (15th ed.1993)).

▮▮▮ Therefore, whether or not Defendant was entitled to an instruction on assisting a criminal first depends upon whether assisting a criminal is factually included in murder or robbery as charged in this case. *See Wright*, 658 N.E.2d at 566–67. To determine whether an alleged lesser-included offense is factually included in the crime charged, we must compare the charging instrument in the specific case with the statute defining the alleged lesser-included offense. *Id.* at 567. If the charging instrument alleges that the means used to commit the crime charged include all of the elements of the alleged lesser-included offense, then the alleged

lesser-included offense is factually included in the crime charged and we must proceed to step three of the *Wright* analysis. *Id.*

The State charged Defendant with *murder* by "knowingly kill[ing] another human being, namely: James Coffman, by stabbing James Coffman multiple times with a deadly weapon, that is: a knife, at and against the person of James Coffman, thereby inflicting mortal stab wounds upon James Coffman, causing James Coffman to die." (R. at 230.) The State also charged Defendant with *robbery* by "knowingly tak[ing] from the person or presence of James Coffman, property, that is: United States Currency, by putting James Coffman in fear or by using or threatening the use of force on James Coffman which resulted in serious bodily injury, that is mortal stab wounds to the person of James Coffman." (R. at 231.) And, the State charged Defendant with *felony murder* by the same means described in the murder and robbery counts. Nothing in these charges identifies the "assistance" element of assisting a criminal. The State would have had to identify an individual, such as Sturgeon, who committed the underlying crime, as well as alleged assistance in covering up the crime or avoiding apprehension by the charged individual, Defendant, to have created a factually-included offense via the charging informations in this case.

■ Defendant concedes as much in her brief where she acknowledges that "the [s]tate's drafting of the charging information would appear to preclude instructing on Assisting a Criminal." Appellant's Br. at 23. However, Defendant follows her concession by arguing that the State's request for an instruction on accomplice liability "amended and expanded the factual nature of the charges" against her, thereby broadening its theory of liability against Defendant, and rendering the crime of assisting a criminal a factually included offense of the charged crimes. Appellant's Br. at 23–24. Defendant claims, without supporting authority, that when the State broadens its theory of liability in this way, due process demands

that the jury be instructed on her theory that she only assisted a criminal and did not participate in, or was not an accomplice to, commission of the underlying crime.

Defendant's argument is an interesting one and we can conceive of situations where there could be a genuine factual dispute as to whether alleged conduct constitutes, on the one hand, aiding the commission of an offense, or, on the other hand, assisting a criminal. But this is not such a situation. As discussed in the preceding paragraph (and in *Sturgeon,* where precisely the same argument was made, 719 N.E.2d at 1183–84), the elements of the crime of Assisting a Criminal do not include the conduct alleged to have been committed by Defendant.

### D

■ Finally, we address Defendant's claim that the failure of the trial court to give the jury the opportunity to convict her of Theft and Assisting a Criminal deprived her of her constitutional rights to a fair trial and to present a defense. We reject this contention. Defendant was free to argue and present evidence to the effect that she was not guilty of killing or robbing Coffman as either the perpetrator or his accomplice and she did so. *See Sanquenetti v. State,* 727 N.E.2d 437, 439 (Ind. 2000) ("We have noted that the current statute supersedes the common law of criminal liability and thus that the legal distinction between a principal and an accessory has ceased to exist.") (citing *Johnson v. State,* 687 N.E.2d 345, 349 (Ind. 1997); *McKnight v. State,* 658 N.E.2d 559, 560–61 (Ind.1995)). She was also free to argue that she was guilty of crimes for which she had not been charged rather than crimes for which she was on trial. The fact that the trial court did not instruct the jury on Theft and Assisting a Criminal did not impinge in any way on her ability to make those arguments or present that defense. It merely prevented the jury from convicting her of the crimes

she acknowledged committing rather than crimes the State had charged she had committed. It is not the prerogative of a criminal defendant to select the charges on which he or she will be tried.

## II

■■■■■ Defendant also argues that the trial court improperly excluded evidence of Sturgeon's bad character, thereby prejudicing her defense, denying her a fair trial, and providing grounds for reversal. The decision to admit evidence is within the sound discretion of the trial court and is afforded a great deal of deference on appeal. *Bacher v. State*, 686 N.E.2d 791, 793 (Ind.1997) (citing *Tynes v. State*, 650 N.E.2d 685, 687 (Ind.1995)). We review evidentiary determinations for abuse of discretion and will not reverse such decisions unless the decision is " 'clearly against the logic and effect of the facts and circumstances' before the court." *Taylor v. State*, 697 N.E.2d 51, 52 (Ind.1998) (quoting *Joyner v. State*, 678 N.E.2d 386, 390 (Ind.1997)); *see also Minnick v. State*, 544 N.E.2d 471, 477 (Ind.1989), *reh'g denied.*

■■■■ The State filed a motion *in limine* requesting that the trial court instruct Defendant not to make any reference to the criminal history, prior bad acts, or character of co-defendant Charles Sturgeon. Defendant argued that the trial court should permit her to present such evidence on the theory that it was relevant to her defense and substantiated her alleged fear of Sturgeon. Defendant testified that she only witnessed Sturgeon's murder of Coffman, and fled with the knife and money to get away from Sturgeon because he intimidated her and she was afraid that he would hurt her. The trial court ruled that Defendant could present evidence of Stur-

geon's lies to police and other bad acts regarding this case, but rejected Defendant's request to present additional character evidence on the theory that it was nothing more than propensity evidence, and therefore disallowed under Ind. Evidence Rule 404.[6] (R. at 878–80.) The rule is generally written, applying to all persons involved in a criminal action, including co-defendants, and offers exceptions with respect to the character of the accused, victims, and witnesses. *See* Evid. R. 404(a)(1)–(3). To decide whether character evidence is admissible under Evid. R. 404, the trial court must: (1) determine whether the evidence of other crimes, wrongs, or acts is relevant to a matter at issue other than the person's propensity to engage in a wrongful act; and (2) balance the probative value of the evidence against its prejudicial effect pursuant to Ind. Evidence Rule 403. *Monegan v. State*, 721 N.E.2d 243, 248 (Ind.1999).

Defendant cites our decision in *Joyner v. State*, 678 N.E.2d 386 (Ind.1997), *reh'g denied,* for the proposition that evidence that another person may have committed a crime is relevant and admissible. However, the trial court judge properly distinguished the facts in *Joyner* from those in this case, noting that in *Joyner* the defendant sought to present specific factual evidence concerning a possible other suspect, the possible other suspect's sighting with the victim, and an argument between the possible other suspect and the victim. *See id.* at 389–90. In the present case, Defendant merely wanted to present character evidence to persuade the jury that it was more likely that Sturgeon murdered and robbed Coffman and that Defendant did not resist Sturgeon's actions out of fear. This argument goes to nothing but propen-

---

**6.** Evid. R. 404 provides in pertinent part:
 (a) Character Evidence Generally. Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion....
 (b) Other Crimes, Wrongs, or Acts. Evidence of other crimes, wrongs, or acts

is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that....

sity. The trial court's decision to exclude evidence on Sturgeon's character is consistent with the Indiana Rules of Evidence, case law, and was well within the court's discretion.

 Moreover, error in the exclusion of evidence is not a basis for reversal on appeal, or otherwise modifying a judgment, unless refusal to take such action is inconsistent with substantial justice. Ind.Trial Rule 61; *see also* Ind. Evidence Rule 103(a). Trial court error is harmless if the probable impact of the error on the jury, in light of all of the evidence, is sufficiently minor such that it does not affect the substantial rights of the parties. *See Miller v. State,* 720 N.E.2d 696, 704 (Ind.1999) (citing *Sylvester v. State,* 698 N.E.2d 1126, 1129 (Ind.1998), *reh'g denied*). Despite the court's ruling, Defendant testified under both direct and cross-examination as to Sturgeon's bad character and his criminal history, including the ten years he served in a Nevada State Penitentiary for robbery. Even assuming that exclusion of the evidence was improper, there was no prejudice to Defendant because she was allowed to testify to Sturgeon's bad character and criminal history, and she fails to establish how the outcome in her case might have differed had the trial court allowed additional evidence of Sturgeon's bad character.

### Conclusion

We affirm the trial court's judgment.

SHEPARD, C.J., and DICKSON, BOEHM, and RUCKER, JJ., concur.