## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 23 2016, 10:24 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jeremy K. Nix
Matheny Hahn Denman & Nix, LLP
Huntington, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Angela N. Sanchez
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Brian K. Bell,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | August 23, 2016<br><br>Court of Appeals Cause No.<br>35A02-1512-CR-2245<br><br>Appeal from the Huntington<br>Superior Court<br><br>The Honorable Jeffrey R.<br>Heffelfinger, Judge<br><br>Cause No. 35D01-1506-F5-136 |

**Riley, Judge.**

## STATEMENT OF THE CASE

Appellant-Defendant, Brian Bell (Bell), appeals his conviction and sentence for dealing in a narcotic drug, a Level 5 felony, Ind. Code § 35-48-4-1.

We affirm.

## ISSUES

Bell raises two issues on appeal, which we restate as follows:

(1) Whether the trial court abused its discretion in admitting certain evidence; and

(2) Whether Bell's sentence is inappropriate in light of the nature of the offense and his character.

## FACTS AND PROCEDURAL HISTORY

In order to avoid prosecution for a felony drug related charge, Mitchel Buzzard (Buzzard) entered into an agreement to work as a confidential police informant for the Huntington Police Department on March 5, 2015. Buzzard's contract mandated him to choose eight people and to at least make two controlled buys from each individual by July 1, 2015.

On May 11, 2015, Buzzard arranged a controlled buy from Matthew Roberts (Roberts), who was an acquaintance. Buzzard agreed, via phone call, to buy five morphine pills for $140. Buzzard contacted Detective Shane Jones (Detective Jones) of the Huntington Police Department about the potential buy. Detective Jones and other detectives met with Buzzard to prepare him for the

transaction. The officers searched Buzzard and provided him with buy money and also gave him audio and video recording equipment.

[6] Bell, who was friends with Roberts, drove Roberts to meet Buzzard at a restaurant parking lot. Buzzard knew Bell from elementary school, and both had lived in the same neighborhood. Upon seeing Bell's vehicle, Buzzard entered the vehicle and sat in the rear seat. Bell then drove to a house on Poplar Street, in Huntington County, Indiana, and parked outside. At that point, Buzzard gave the $140 buy money to Roberts, but instead of keeping it, Roberts offered the buy money to Bell. The police, who were maintaining surveillance of the transaction, saw Bell exit his vehicle and go inside an apartment on Poplar Street belonging to a man from whom the police had made previous controlled drug buys. After about four minutes, Bell returned to his vehicle and gave Buzzard five morphine pills wrapped in cellophane. Three of the morphine pills were 60 milligrams, and two were 30 milligrams. Bell then drove back to the restaurant parking lot where he had met with Buzzard. Buzzard exited Bell's vehicle and walked to the location where the police were parked and handed over the morphine pills and recording equipment. Buzzard refused to make a second controlled buy from Bell since he did not want to get Bell in trouble.

[7] On June 15, 2015, the State filed an Information, charging Bell with dealing in a narcotic drug, a Level 5 felony. On October 16-17, 2015, the trial court conducted a jury trial. At the close of the hearing, the jury found Bell guilty as charged. On December 1, 2015, the trial court held a sentencing hearing and

subsequently sentenced Bell to an executed sentence of six years at the Department of Correction.

[8] Bell now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Best Evidence*

[9] Bell first claims that the trial court abused its discretion by permitting the State to question Buzzard about a certain term heard on the audio recording. Specifically, Bell challenges Buzzard's testimony under the best evidence principles. We note that the best evidence rule simply refers to the principle that when trying to prove the content of a document, recording, or photograph, an original is the best evidence of that content. Ind. Evidence Rule 1002. "However, when a witness has personal knowledge of the facts contained in the best evidence, the best evidence rule will not bar the witnesses' [sic] testimony since the witness is not being asked to reveal the contents of the best evidence, but rather is being asked to recall his own independent observations." *Lopez v. State*, 527 N.E.2d 1119, 1125 (Ind. 1988).

[10] Further, we observe that the decision to admit or exclude evidence is within the trial court's sound discretion and is "afforded a great deal of deference on appeal." *Hauk v. State*, 729 N.E.2d 994, 1001 (Ind. 2000). We will not reverse that decision absent a manifest abuse of discretion resulting in the denial of a fair trial. *Edwards v. State*, 724 N.E.2d 616, 620 (Ind. Ct. App. 2000).

As noted above, Buzzard was equipped with audio and video recording equipment to monitor the controlled buy. At trial, the State sought to introduced the audio recording as Exhibit 3. As the State published that audio recording to the jury members, Buzzard was on the witness stand and the State asked questions to provide context of the voices, background noises, and events occurring. Buzzard identified his voice, Roberts' voice, and Bell's voice. Also without objection, he identified Roberts as the speaker who asked him for the buy money. Without objection, Buzzard testified that he gave Roberts the buy money when Roberts asked for it, and that Bell returned to the car and gave him the morphine pills before they drove away. At some point the State asked

> THE STATE: . . . [W]ho is that talking right there?
>
> [BUZZARD]: [Roberts]
>
> THE STATE: He referred to Perks. What are Perks?
>
> [BUZZARD]: Oxycodone[]s.
>
> THE STATE: What are Opanas?
>
> [BUZZARD]: Um, I believe they are Hydromorphone pills.
>
> THE STATE: Okay. Also pain med pills?
>
> [BUZZARD]: Correct.
>
> **Recording stopped at 4:13:37**

THE STATE:  There was . . .

[BELL'S] COUNSEL:  Your Honor, I'm going to have to object at this point.  What I'm hearing is [the State] testifying . . . .[T]his information should come from his own testimony and not from [the State].  . . . I didn't hear 'perks'. . .

THE COURT:  I don't think [] she's referring to what the tape says and asks him to identify it or to explain it.  That's not improper.

[BELL'S] COUNSEL:  I'm saying I didn't hear that word.

THE COURT:  Well if the jury didn't hear then . . . (sic).

[BELL'S] COUNSEL:  What gives her the right to … (sic).

THE COURT:  Then they are going to have the same interpretation you are.  But [] the jury will be able to listen to the tape again if they wish and as many times as they wish.

[BELL'S] COUNSEL:  Right, right.  And the best evidence is the witness.

THE STATE:  Well, the best evidence is the recording**.**

****

THE COURT:  I'm going to overrule the objection.  You can note your objection.

(Transcript pp. 194-95).

[12] From the above, it appears that Bell did not reference the best evidence rule as his reason for objecting to Buzzard's testimony. Rather, the substance of Bell's objection appears to have been focused on the form of questioning and his belief that the State was asking leading questions. Bell does not develop an argument on appeal that the form of the questioning was leading and because Bell cannot object on one basis at trial and raise another basis on appeal, he has waived appellate review of any claim that the challenged questioning violated the best evidence rule. *See Phillips v. State,* 22 N.E.3d 749, 757 (Ind. Ct. App. 2015). Indeed, the rule of waiver protects the integrity of the trial court in that the trial court cannot be found to have erred as to an argument that it never had an opportunity to consider. *T.S. v. Logansport State Hosp.*, 959 N.E.2d 855, 857 (Ind. Ct. App. 2011), *trans. denied.* Therefore, Bell's claim is waived.

[13] Waiver notwithstanding, we conclude that there was no error. To the extent that the contents of the recordings were in dispute, the recordings were available for review by the jury during deliberations. Moreover, the disputed testimony primarily relates to Buzzard clarifying the use of a slang term for a certain drug during his conversation with Roberts. It does not relate to the specific drug that Bell sold to Buzzard, which was morphine. It also did not relate directly to Bell's role in the crime. In light of the overwhelming evidence of Bell's guilt presented at trial, it is unlikely that the jury's decision was influenced by Buzzard clarifying the meaning of "perks", the street name of Oxycodone. *See Halliburton v. State*, 1 N.E.3d 670, 683 n. 7 (Ind. 2013) ("Where

evidence of guilt is overwhelming any error in the admission of evidence is not fundamental."). Accordingly, we find no error here.

## II. *Inappropriate Sentence*[1]

[14] Lastly, Bell contends that his six-year sentence is inappropriate in light of the nature of the offense and his character. Indiana Appellate Rule 7(B) provides that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." The burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). "Ultimately the length of the aggregate sentence and how it is to be served are the issues that matter." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). Whether we regard a sentence as appropriate at the end of the day turns on our sense of the culpability of the defendant, the severity of the crime, the damage

---

[1] Pursuant to Indiana Administrative Rule 9(G)(2)(b) and Indiana Code section 35-38-1-13, the presentence investigation (PSI) report must be excluded from public access. However, in this case, the information contained in the PSI report "is essential to the resolution" of Bell's claim on appeal. Ind. Admin. Rule 9(G)(7)(a)(ii)(c). Accordingly, we have included confidential information in this decision only to the extent necessary to resolve the appeal.

done to others, and a myriad of other considerations that come to light in a given case. *Id.*

[15] The advisory sentence is the starting point the legislature has selected as an appropriate sentence for the crime committed. *Abbott v. State*, 961 N.E.2d 1016, 1019 (Ind. 2012). For his Level 5 felony dealing in a narcotic drug, Bell faced a sentencing range of one to six years, with the advisory sentence being three years. Here, the trial court imposed the maximum sentence.

[16] As to the nature of the offense, Bell argues that he was not the target of the controlled buy, and he happened to drive his vehicle in which the target of the drug buy was present. Bell's culpability is not diminished based on the fact that he was not the actual target. The record shows that Bell received $140 from Buzzard and, in return, he gave Buzzard five morphine pills.

[17] As to Bell's character, the record shows that he has an extensive criminal history. Bell's criminal record dates back to 2002, and it includes twelve convictions, including domestic battery, resisting law enforcement, operating a vehicle while intoxicated with a prior conviction, driving while suspended, public intoxication, and possession of alcohol by a minor. Furthermore, this is not Bell's first drug offense, Bell has been convicted of dealing in marijuana. In addition, Bell's probation has been revoked three times.

[18] Despite his numerous prior contacts with the criminal justice system, Bell has not reformed his criminal behavior. Here, we cannot say that the six-year

sentence imposed by the trial court is inappropriate in light of the nature of the offense and the character of the offender.

## CONCLUSION

[19] Based on the foregoing, we find no error in the admission of Buzzard's testimony; and Bell's sentence is appropriate in light of the nature of the offense and his character.

[20] Affirmed.

[21] Kirsch, J. and Pyle, J. concur